UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

M3 USA CORPORATION,

        *Plaintiff*,

v.

SAVANAH HAUNERT,

        *Defendant.*

No. 20-cv-3784 (DLF)

## MEMORANDUM OPINION

Before the Court is the plaintiff's Motion to Remand, Dkt. 7. For the reasons that follow, the Court will deny the motion.

**I.    BACKGROUND**

The plaintiff, M3 USA Corporation (M3), filed its complaint in D.C. Superior Court alleging one count of breach of contract against Savanah Haunert, a former employee who left M3 to work for a competitor in alleged violation of a non-compete covenant. *See generally* Compl., Dkt. 1-4. M3 alleges that Haunert worked for M3 for about four years as a Qualitative Project Manager, Project Manager II, and then Project Manager III, *id.* ¶¶ 11, 25, and that Haunert was privy to valuable confidential information in that time, *id.* ¶ 24.

M3's complaint did not assert an amount in controversy, but simply stated that, "[a]s a result of Haunert's breach of the [agreement], M3 has been damaged in an amount to be determined at trial." *Id.* ¶ 41. Haunert then removed the case to federal court on the basis of diversity jurisdiction, asserting in her notice of removal that the amount in controversy exceeds $75,000. Notice of Removal, Dkt. 1, ¶¶ 11–13. M3 responded by filing a motion to remand, arguing that Haunert had not met her burden to demonstrate that the amount in controversy

requirement had been satisfied. Haunert opposed the motion to remand and included supporting exhibits and declarations. Def.'s Opp'n, Dkt. 9. The motion is now ripe for review.

## II.  LEGAL STANDARDS

Federal district courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To invoke federal jurisdiction on the basis of diversity of citizenship, the amount in controversy must exceed $75,000. 28 U.S.C § 1332(a). The removal statute states that, ordinarily, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). Where the complaint does not assert a particular amount in controversy, however, as is the case here, "the notice of removal may assert the amount in controversy." *Id.* (c)(2)(A).

In such situations, "removal of the action is proper on the basis of an amount in controversy asserted [in the notice of removal] if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000]." *Id.* § 1446(c)(2)(B); *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 82 (2014) ("[T]he court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.").[1] "Although the burden of proof may be with the defendant . . . . courts may consider

---

[1] The parties dispute the appropriate standard of review. Haunert argues that "[t]o justify dismissal on jurisdictional grounds, it must appear to a *legal certainty* that the amount in controversy requirement has not been met." Def.'s Opp. at 1 (emphasis added). This statement is overbroad and, in this case, incorrect. The legal certainty standard from *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938), applies where the *plaintiff* has asserted an amount in controversy in the complaint and herself brought the case in federal court. *See Rosenboro v. Kim*, 994 F.2d 13, 16–17 (D.C. Cir. 1993) ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that . . . the sum *claimed by the plaintiff* controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." (cleaned up)). Where, as here, the plaintiff failed to assert an amount in controversy, the removal statute and its

the evidence provided to them and exercise some degree of common sense in order to independently determine whether the amount in controversy has been met." *Parker-Williams v. Charles Tini & Assocs., Inc.*, 53 F. Supp. 3d 149, 152 (D.D.C. 2014).

### III. ANALYSIS

In its complaint, M3 seeks three different categories of relief—compensatory damages, injunctive relief, and attorneys' fees and costs as provided for in the contract. *See* Compl. at 7 (Prayer for Relief). Taking these three bases for relief together, a preponderance of the evidence supports the conclusion that the amount in controversy here exceeds $75,000.

Consider first M3's claim for compensatory damages. As evidence for the likely compensatory value, Haunert points to a related case M3 brought against another former employee in a different district. *See* Dkt. 9-1, Compl., *M3 USA Corp. v. Karie Hart, et al.*, No. 2:20-cv-5736 (Nov. 16, 2020) (Related M3 Compl.). Although the other former employee and Haunert hold different titles, M3 alleged in that action that that other employee primarily oversaw two main accounts, and that "Haunert supported [that] employee on these accounts." Def.'s Ex. 2, Dkt. 9-1 (Lamitina Decl.). M3 specified in particular that "Haunert supported Hart's work on the BluePrint account." Related M3 Compl. ¶ 36.

M3 clarifies its economic losses in the related action. *See generally id.* It alleges that, in the relevant time period, "M3's 'win rate' for BluePrint projects dropped by 7.69 percent and bid counts for projects were down by 42 bids, year-over-year." *Id.* ¶ 39. Haunert provides context to these figures, explaining that, in 2019, the median value of bid requests for her current company (M3's competitor), was $16,090. Udeshi Decl. ¶ 5, Dkt. 9-2. She further explains that bid requests are "set by the customers, not by the market research vendor companies, so the bid

---

preponderance standard govern. *See* 28 U.S.C. § 1446(c)(2); *see also Dart Cherokee Basin*, 574 U.S. at 82 (citing the standard).

3

value numbers are generally reflective of the market, and are not peculiar to [the competitor company]." *Id.* ¶ 7. Multiplying the median value of bids by the number of BluePrint bids M3 alleges that it lost in the related litigation (which it attributes in part to Haunert's assistance) yields a total value of $675,780. Plus, "[t]o the extent that the median value of bid requests received by [M3] differs from [its competitor], it is almost certainly larger, because [M3] is a far larger company and has the capacity for larger bid requests that customers might not yet send to [competitors]." *Id.* ¶ 8. Not to mention, "[t]he median value of bid requests received from BluePrint are significantly greater than the median value of all bid requests received[.]" *Id.* ¶ 9.

M3 also requests injunctive relief, which further adds to the amount in controversy. In particular, M3 seeks an injunction barring Haunert from working for her current company or any company "that provides healthcare or pharmaceutical market research for any customer or client of M3 for whom she provided any such services at M3" for one year. *See* Compl. at 8. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). In assessing this value, "courts look to either the value of the right the plaintiff seeks to enforce or the cost to the defendants to remedy the alleged denial of that right." *Busby v. Cap. One, N.A.*, 932 F. Supp. 2d 114, 132 (D.D.C. 2013). "While the value of injunctive relief is difficult to quantify, federal courts have not had difficulty finding the requisite jurisdictional amount in actions brought to enforce covenants not to compete." *Info. Strategies, Inc. v. Dumosch*, 13 F. Supp. 3d 135, 142 (D.D.C. 2014) (cleaned up). Here, Haunert's annual salary at her current company is $70,000, plus any annual bonuses for which she may be eligible. Udeshi Decl. ¶ 10. The "[m]arket research in the healthcare space is a highly competitive industry, with high employee turnover between companies competing over

4

the same clients and customers." Compl. ¶ 10.  Further, Haunert's expertise is in part based on existing relationships with vendors that she developed at M3.  *See id.* ¶ 22.  Accordingly, the Court finds it likely that an injunction barring Haunert from any employment for a competitor in the same field would impose significant costs.

Adding in M3's claim for attorney's fees and costs, the sum grows greater.  "Courts in this District have determined that attorney's fees do not count towards the amount in controversy requirement *unless* they are provided for by a contract in issue or by a statute in controversy." *Griffin v. Coastal Int'l Sec., Inc.*, No. 06-cv-2246, 2007 WL 1601717, at *3 (D.D.C. June 4, 2007) (internal quotation marks omitted and emphasis added).  Here, Haunert asserts, *see* Def.'s Opp'n at 6–7, and M3 does not dispute, *see generally* Pl.'s Mot.; Pl.'s Reply, Dkt. 10, that the agreement between the parties provided for recovery of attorney's fees.

The D.C. Circuit has held that the *Laffey* matrices "provide a useful starting point" in calculating attorney's fees.  *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995).  Applying the matrix, Haunert explains that, given the years of experience of Haunert's counsel, "it would take 82 hours of work to meet the jurisdictional threshold on the basis of attorneys' fees *alone*[.]"  Def.'s Opp'n at 7 (emphasis added).  Factoring in the maximum value of the injunction ($70,000), "it would only take 5.5 hours of work to meet the jurisdictional threshold."  *Id.*

M3 does not meaningfully dispute this evidence or submit evidence to the contrary.  *See generally* Pl.'s Mot.; Pl.'s Reply.  Rather, it focuses its argument on the form of Haunert's notice of removal, arguing that "Defendant argues in a conclusory fashion that more than $75,000 is at issue in this case," Pl.'s Mot. at 1, and "the Notice is completely devoid of any facts to establish that the amount in controversy exceeds $75,000," *id.* at 5.

But the Supreme Court's holding in *Dart Cherokee Basin* forecloses this argument. 574 U.S. at 82. There, the Court held that, "as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 89. Put differently, the notice of removal itself, "need not contain evidentiary submissions." *Id.* at 84.

In the face of this clear holding, M3 argues that the Court's decision in *Dart Cherokee Basin* does not apply here and claims that "the *Dart* decision squarely addresses the issue that it only applies the removal standard for purpose of CAFA." *See* Pl.'s Mot. at 6 (emphasis removed). M3 provides little support for this proposition, primarily citing non-binding cases for the non-germane proposition that the *Dart Cherokee Basin* standard *does* apply in Class Action Fairness Act (CAFA) cases. *See* Pl.'s Mot. at 7.

M3 does point to one quote from *Dart Cherokee Basin* on the related issue of whether all diversity cases, rather than just CAFA cases, should dispense with the presumption against removal. *Id.* at 6–7. There, the Court acknowledged that "[i]n remanding the case to state court, the District Court relied, in part, on a purported 'presumption' against removal." *Dart Cherokee Basin*, 574 U.S. at 89. The Court went on to conclude that, "[w]e need not here decide whether such a presumption is proper in mine-run diversity cases. It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Id.* In any case, whether an antiremoval presumption applies in mine-run diversity cases such as this one—a question the Court left for another day—makes no difference here, where the evidence of the amount in controversy is sufficient even to overcome an antiremoval presumption.

In sum, for the foregoing reasons, Haunert has met her burden to demonstrate by a preponderance of the evidence that the amount of controversy in this case exceeds $75,000.

*Dabney L. Friedrich*
_____
DABNEY L. FRIEDRICH
United States District Judge

May 11, 2021